Filed 4/18/24; Certified for Publication 5/15/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SAVE THE CAPITOL, SAVE THE TREES, | C100160 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2021-80003717-CU-WM-GDS) |
| v. | |
| DEPARTMENT OF GENERAL SERVICES, | |
| Defendant and Respondent; | |
| JOINT COMMITTEE ON RULES OF THE CALIFORNIA STATE SENATE AND ASSEMBLY, | |
| Real Party in Interest and Respondent. | |

Plaintiff Save the Capitol, Save the Trees (Save the Capitol) appeals from an order discharging a peremptory writ of mandate that was issued by the trial court following direction from this court in *Save Our Capitol! v. Department of General Services* (2023) 87 Cal.App.5th 655, 711 (*Save Our Capitol*). In *Save Our Capitol*, this court reversed in part and affirmed in part the trial court's denial of two petitions for writ of mandate, one sought by Save the Capitol (the appellant in this appeal) and the other sought by an organization named Save Our Capitol!, which is not a party to this appeal. This court concluded that an environmental impact report (EIR) analyzing the impacts of a proposed project that will significantly alter the California State Capitol complex (the project),

1

prepared by defendant Department of General Services and real party in interest Joint Committee on Rules of the California State Senate and Assembly (collectively DGS), failed to comply with the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).[1]  On remand, the trial court issued a peremptory writ of mandate directing DGS to, among other things, vacate in part its certification of the EIR and all associated project approvals consistent with this court's opinion in *Save Our Capitol* and file a final return to the writ "upon certification of a revised EIR."  After DGS partially vacated its certification of the EIR and all associated project approvals, it revised, recirculated, and certified the revised final EIR.  DGS then partially reapproved the project without one of the project components, the visitor center.  DGS thereafter filed its final return and the trial court discharged the writ, over plaintiff's objection, without determining whether the revised final EIR remedied the CEQA violations this court had identified in its opinion.

In this appeal Save the Capitol contends discharge of the writ was premature because (1) the writ not only required DGS to revise and recirculate the defective portions of the EIR, but also to certify a revised EIR consistent with *Save Our Capitol* before the writ could be discharged; and (2) DGS has not yet reapproved the visitor center component of the project.

We conclude that as to the approved project components, the trial court must determine that the revised EIR is consistent with *Save Our Capitol* before discharging the writ.  We will reverse and remand for further proceedings.

BACKGROUND

The nature of the contentions raised in this appeal do not require a detailed description of the project.  A more complete description can be found in *Save Our*

---

[1] Undesignated statutory references are to the Public Resources Code.

*Capitol, supra*, 87 Cal.App.5th 655.  For our purposes, it is sufficient to note that at the time of this court's prior opinion, the project consisted of three primary components: (1) demolishing the existing Annex attached to the east side of the Historic Capitol and constructing a new attached Annex; (2) constructing a new underground visitor center on the west side of the Historic Capitol; and (3) constructing a new underground parking garage.  (*Id.* at p. 667.)

In September 2019, a draft EIR was circulated for public review and comment. The following January, portions of the draft EIR were revised and recirculated due to design changes to the visitor center component of the project.  (*Save Our Capitol, supra*, 87 Cal.App.5th at p. 668.)  Additional changes to the project, including to the Annex's exterior and the location of the parking garage, did not result in revision or recirculation of the draft EIR.  (*Id*. at pp. 668-669.)  Instead, DGS evaluated those modifications in the final EIR and determined that the project modifications would not result in any new significant impacts or substantially more significant impacts than those addressed in the draft EIR and the recirculated draft EIR, and they would not require any new or different mitigation measures.  DGS also concluded that none of the modifications constituted significant new information requiring recirculation of the EIR.  It certified the EIR on July 30, 2021, and approved the project as modified.  At the same time, it issued findings of fact and a statement of overriding considerations.  (*Id*. at p. 669.)

The organizations Save Our Capitol! and Save the Capitol filed petitions for writ of mandate asserting various CEQA violations.  The trial court denied the petitions and entered judgment in July 2022.

In December 2022, this court issued an opinion in consolidated appeals (modified on rehearing on January 18, 2023), partially reversing the judgment and concluding: "The EIR's project description, analyses of historical resources and aesthetics, and analysis of alternatives do not comply with CEQA."  (*Save Our Capitol, supra*, 87 Cal.App.5th at p. 666.)  With respect to the project description, this court concluded

3

the description of the Annex's exterior design changed significantly in the final EIR. (*Id*. at p. 676.) Whereas the draft and recirculated draft EIRs did not describe the new Annex's exterior design and broadly stated that the aesthetics and materials would be "consistent" with the Historic Capitol and would create a "one-building feel," the final EIR indicated the new Annex would have a glass exterior "compatible" rather than consistent with the Historic Capitol, and the one-building feel would instead be created within the new Annex's interior spaces. (*Ibid*.) Because this change occurred in the final EIR, the public was not provided a meaningful opportunity to comment on the glass exterior's impact on the Capitol. (*Ibid*.)

This court also concluded the EIR's analysis of historical resources was deficient to the extent it did not permit public comment on the new Annex's exterior design disclosed in the final EIR. (*Save Our Capitol, supra*, 87 Cal.App.5th at p. 683.) With respect to the EIR's analysis of aesthetics, this court concluded that CEQA required the EIR to include an explanation of how light emitted from the then-existing Annex would compare to light emitted from the new Annex's glass exterior. (*Save Our Capitol,* at p. 696.) A majority of the panel also concluded that CEQA required the EIR to include a representation or rendering that would allow the public and decision-makers to understand and consider the view of the Historic Capitol's west side from Capitol Mall once the visitor center was completed. (*Id*. at p. 695.)

Finally, with respect to the EIR's analysis of alternatives, this court concluded "the alternatives chosen did not contribute to a reasonable range of alternatives that fostered informed public participation and decision-making." (*Save Our Capitol, supra*, 87 Cal.App.5th at p. 703.) The EIR considered three alternatives that would have moved the visitor center away from the Capitol's west side, and found that none of the alternatives met project objectives and avoided significant effects. (*Id*. at pp. 703-704.) This court concluded CEQA requires consideration of an alternative that would feasibly attain most of the project's objectives while also lessening the project's significant

4

impacts on the west lawn, such as moving the visitor center to the Capitol's south side. (*Id*. at pp. 703-705.)

This court reversed the judgment "to the extent it found DGS had complied with CEQA and its findings were supported by substantial evidence with regard to the EIR's project description, its analysis of the project's impacts on historical resources and aesthetics, and its analysis of alternatives." (*Save Our Capitol, supra*, 87 Cal.App.5th at p. 711.) This court affirmed the judgment in all other respects and remanded the matter "with directions to issue a peremptory writ of mandate directing DGS to vacate partially its certification of the EIR and to revise and recirculate the deficient portions of the EIR consistent with this opinion before it considers recertifying the EIR." (*Ibid*.)

On remand in June 2023, and as relevant to the instant appeal, the trial court vacated its prior judgment, entered a new judgment in favor of Save the Capitol, granted the petition for writ of mandate in part, and issued a peremptory writ of mandate directing DGS to: (1) vacate in part its certification of the EIR and all associated approvals for the project "consistent with the Opinion of the Court of Appeal" and file a preliminary return to the writ within 30 days describing its compliance with this mandate; (2) suspend project activities that will physically alter the Capitol, Capitol Park, or the Capitol Complex during remand, aside from demolition of the existing Annex and refrain from further discretionary project approvals that rely on decertified portions of the EIR until the writ is discharged; and (3) file a final return to the writ "upon certification of a revised EIR." The writ further stated: "The parties shall meet and confer to attempt to resolve any disputes about the adequacy of the return to this Writ. If no resolution is reached, [Save the Capitol] may request a hearing and the Court will adjudicate any outstanding objections. [¶] The Court shall retain jurisdiction over the proceedings pending your compliance with CEQA and the final discharge of the Writ."

In July 2023, DGS issued a partial decertification of the final EIR for the project. DGS decertified and vacated associated approvals "for the parts of the Capitol

5

Annex Project EIR that the Court identified as requiring remedy, as described below: [¶ . . .¶] 1. The portion of the project description as it relates to the new Annex's exterior façade, and [¶] 2. The discussion of the effects of the exterior appearance of the new Annex on the Capitol Complex, and [¶] 3. The discussion of impacts of the generation of light from the proposed glass exterior of the new Annex on the surrounding area, and [¶] 4. The discussion of aesthetic impacts of the visitor/welcome center on the historic Capitol's west side as viewed from Capitol Mall, and [¶] 5. The finding that the EIR considered a reasonable range of alternatives with respect to the Visitor Center." The partial decertification stated "[a]ll other parts of the EIR, which are not specified in this decertification, remain certified and in full effect." Thereafter, DGS filed a preliminary return to the writ stating that it "partially decertified the EIR and vacated associated approvals in a manner consistent with the judgment."

In September 2023, DGS certified a revised final EIR, partially reapproved the project without the visitor center component, and filed its final return to the writ. The following month, Save the Capitol filed a notice of intent to file objections and requested a hearing, but stated: "It is premature to brief its objections because DGS has not yet produced a supplemental administrative record on remand to evidence its compliance with CEQA." The trial court set a briefing schedule. Save the Capitol requested an extension of the briefing schedule, again noting that DGS had not produced a supplemental administrative record to show compliance with CEQA. Save the Capitol also explained that it "did not file a new action on the revised DGS project approval" and was instead "exercising its option to pursue its objections to the writ return within this litigation." DGS opposed the extension request, arguing that whether the revised final EIR remedied the CEQA deficiencies identified in *Save Our Capitol* was outside the scope of the briefing. The trial court granted a brief extension of the briefing schedule.

Save the Capitol filed its objections to the final return in November 2023. It argued the *Save Our Capitol* opinion required DGS to revise and recirculate the deficient

6

portions of the EIR consistent with the opinion before it considered recertifying the EIR, and that requirement was incorporated into the peremptory writ. According to Save the Capitol, case law allowed it to challenge DGS's purported compliance with the writ either by writ return challenge or a new case. Because it elected to proceed by writ return challenge, Save the Capitol argued that in order for the writ to be discharged, DGS was required to demonstrate that the revised final EIR remedied the CEQA deficiencies identified in *Save Our Capitol.*

DGS countered that the writ language did not require a determination of the revised final EIR's compliance with the *Save Our Capitol* opinion before discharge of the writ. Instead, DGS argued, the writ required it to vacate in part its certification of the EIR and all associated project approvals consistent with that opinion, suspend related project activities, refrain from further related project approvals until the writ was discharged, and file a final return to the writ upon certification of a revised EIR. Thus, DGS argued, the writ only contemplated discharge upon certification of the revised final EIR. There was no requirement of a determination that the revised EIR remedied the deficiencies identified in the *Save Our Capitol* opinion. That question, according to DGS, had to be brought in a new challenge.

The trial court ordered supplemental briefing on whether discharge of the writ would be proper given that DGS had certified the revised final EIR but had approved only two of the three project components. DGS argued there was no CEQA requirement to approve the entirety of the project, any future approval of the third component of the project would trigger a new challenge deadline, and the writ should be discharged because DGS complied with the specific terms of the writ. Save the Capitol responded that the writ could not be discharged without adjudicating EIR adequacy to cure the CEQA violations identified in *Save Our Capitol* and the trial court should not discharge the entire peremptory writ when only part of the project had been approved.

7

The trial court discharged the writ in December 2023. We will provide additional background details in the discussion as relevant to the contentions on appeal.

DISCUSSION

I

Save the Capitol contends discharge of the writ was premature because the writ not only required DGS to revise and recirculate the defective portions of the EIR, but also to do so in a manner consistent with this court's opinion in *Save Our Capitol*, and thus certification of the revised final EIR was not enough to discharge the writ because there has not yet been an adjudication as to the adequacy of the revised EIR.

A

Where, as here, the trial court finds, as a result of a remand from an appellate court, that a public agency such as DGS has violated CEQA, the trial court shall enter a peremptory writ of mandate directing the agency to take certain actions in order to bring the agency into compliance with CEQA. (§ 21168.9, subd. (a).) There are three types of mandates that may issue under section 21168.9. (*McCann v. City of San Diego* (2023) 94 Cal.App.5th 284, 292 (*McCann*).) First, the trial court may "mandate that the determination, finding, or decision be voided by the public agency, in whole or in part." (§ 21168.9, subd. (a)(1).) Second, where certain conditions exist, the trial court may "mandate that the public agency and any real parties in interest suspend any or all specific project activity or activities . . . until the public agency has taken any actions that may be necessary to bring the determination, finding, or decision into compliance with [CEQA]." (§ 21168.9, subd. (a)(2).) Third, the trial court may "mandate that the public agency take specific action as may be necessary to bring the determination, finding, or decision into compliance with [CEQA]." (§ 21168.9, subd. (a)(3).)

The peremptory writ must include "one or more of [the] specified mandates." (*Preserve Wild Santee v. City of Santee* (2012) 210 Cal.App.4th 260, 286 (*Preserve Wild Santee*).) However, section 21168.9, subdivision (b) provides, in relevant part, that the

8

peremptory writ "shall include only those mandates which are necessary to achieve compliance with [CEQA] and only those specific project activities in noncompliance with [CEQA]." (§ 21168.9, subd. (b).) The peremptory writ must also "specify[] what action by the public agency is necessary to comply with [CEQA]." (*Ibid*.) Finally, "[t]he trial court shall retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with [CEQA]." (*Ibid*.)

Section 21168.9. subdivision (c) then provides: "Nothing in this section authorizes a court to direct any public agency to exercise its discretion in any particular way. Except as provided in this section, nothing in this section is intended to limit the equitable powers of the court." While this subdivision provides the agency with "discretion to determine *how* to comply with CEQA[,] . . . an agency does not have discretion to decide *whether* to comply with CEQA; thus, an order directing an agency to comply with CEQA, including by ordering it to 'take specific action as may be necessary to bring [its] determination, finding, or decision into compliance with [CEQA]' (§ 21168.9, subd. (a)(3)), is entirely within the court's remedial authority." (*Natural Resources Defense Council, Inc. v. City of Los Angeles* (2023) 98 Cal.App.5th 1176, 1236 (*Natural Resources*).)

"Once a peremptory writ of mandate has been issued, the court 'should order the agency to file a return by a date certain informing the court of the agency's actions in compliance with the writ." (*McCann, supra*, 94 Cal.App.5th at p. 292.) Where the peremptory writ directs the public agency to take specific action and the return states that the court's mandate has been carried out, the petitioner may challenge the validity of that claim by new or supplemental writ; but the petitioner is not required to proceed by writ and may challenge the writ return as failing to demonstrate compliance with CEQA. (*City of Carmel-by-the-Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964, 971 (*Carmel-by-the-Sea*); *County of Inyo v. City of Los Angeles* (1977) 71 Cal.App.3d 185,

9

203 (*County of Inyo*) [sustaining petitioner's objection to respondent's return to the writ of mandate because the EIR failed to comply with CEQA].)

We independently interpret section 21168.9, but we review the trial court's decision to choose a particular remedy under that section for abuse of discretion. (*Natural Resources, supra*, 98 Cal.App.5th at p. 1233; *Preserve Wild Santee, supra*, 210 Cal.App.4th at p. 287.) We also independently interpret the terms of the peremptory writ of mandate as a question of law, but we review the adequacy of DGS's return under the abuse of discretion standard of review because the " 'attempt to comply with the writ is, for all practical purposes, an attempt to comply with CEQA.' [Citation.]" (*McCann, supra*, 94 Cal.App.5th at p. 292.)

B

This court's *Save Our Capitol* decision held that DGS violated CEQA in that (1) the project description of the Annex exterior design changed significantly without a meaningful opportunity for public comment; (2) the analysis of historical resources and aesthetics did not permit meaningful public comment on the new Annex's revised exterior design, did not provide a light-emission comparison between the existing and new Annex exteriors, and did not include a rendering of the view of the west side of the Capitol depicting a completed visitor center; and (3) the chosen alternatives did not offer a reasonable range of alternatives. (*Save Our Capitol, supra*, 87 Cal.App.5th at pp. 676, 683, 695-696, 703-705.) This court reversed the trial court's judgment "to the extent it found DGS had complied with CEQA and its findings were supported by substantial evidence with regard to the EIR's project description, its analysis of the project's impacts on historical resources and aesthetics, and its analysis of alternatives." (*Id.* at p. 711.) This court affirmed the judgment in all other respects and remanded the matter with directions to the trial court to "issue a peremptory writ of mandate directing DGS to vacate partially its certification of the EIR and to revise and recirculate the deficient

10

portions of the EIR consistent with this opinion before it considers recertifying the EIR." (*Ibid*.)

On remand, the trial court issued a peremptory writ of mandate imposing all three of the mandate types authorized by section 21168.9. The writ directed DGS to (1) vacate in part its certification of the EIR and all associated approvals for the project "consistent with the Opinion of the Court of Appeal" and to file a preliminary return to the writ within 30 days notifying the trial court that it had done so; (2) suspend project activities that would physically alter the Capitol, Capitol Park, or the Capitol Complex during remand, aside from demolition of the existing Annex (as had been specifically authorized by this court in its modified opinion) and refrain from further discretionary project approvals that would rely on decertified portions of the EIR until the writ was discharged; and (3) file a final return to the writ "upon certification of a revised EIR."

There is no challenge to DGS's compliance with the first two directives in the writ. The meaning of the third directive is at issue here. DGS argues the writ could be discharged once DGS certified a revised EIR, whether or not the revised EIR remedied the CEQA deficiencies identified by this court in *Save Our Capitol.* According to DGS, the third directive did not require DGS to remedy the deficiencies. We disagree.

Section 21168.9, subdivision (a)(3), in articulating the third mandate type, authorized the trial court to mandate that DGS take specific action to bring the project into compliance with CEQA. In addition, section 21168.9, subdivision (b) required the trial court to retain jurisdiction by way of a return to the peremptory writ until the court determined that DGS complied with CEQA. Those provisions advance the manifest purpose of a peremptory writ in this context, which is to ensure CEQA compliance after violations have been identified. (*Natural Resources, supra*, 98 Cal.App.5th at p. 1236.)

This court identified CEQA violations and ordered the trial court to issue a peremptory writ of mandate directing DGS to, among other things, revise and recirculate the deficient portions of the EIR consistent with this court's opinion before DGS

11

considered recertifying the EIR. (*Save Our Capitol, supra*, 87 Cal.App.5th at p. 711.) The trial court's first directive in the writ required DGS action consistent with this court's opinion. The writ language also expressly stated, consistent with section 21168.9, subdivision (b), that the trial court retained jurisdiction over the proceedings *pending compliance with CEQA and the final discharge of the Writ.*

We must presume, absent evidence to the contrary, that the trial court followed applicable law (see *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913-914) and that it also followed our directions on remand. In keeping with the applicable statutory language, the purpose of a peremptory writ in this context, and the language of this court's direction to the trial court, we interpret the writ to require EIR decertification and subsequent revised EIR certification consistent with *Save Our Capitol*. Accordingly, the peremptory writ required DGS to certify a revised EIR consistent with this court's opinion before the writ could be discharged.

DGS cites *McCann, supra*, 94 Cal.App.5th 284, as an example of a writ that did not require remedial action. But that case is distinguishable because the court of appeal's prior direction to the trial court did not order remedial action in compliance with CEQA. (*McCann, supra*, 94 Cal.App.5th at p. 293.) Unlike in *McCann*, this court directed action consistent with *Save Our Capitol* before recertification of the EIR. (*Save Our Capitol,* 87 Cal.App.5th at p. 711.)

Noting that Save the Capitol drafted the language of the peremptory writ, DGS argues it should have made its preferred interpretation explicit but did not do so. Although clearer writ language would have been preferrable, as we have explained, the language encompassed applicable law, the purpose of the writ in this context, and this court's order, and could not properly deviate from those things.

DGS further argues a remedial requirement is unworkable because it would permit simultaneous identical challenges to the revised EIR, creating the potential for inconsistent adjudications of the same issue. DGS points out that the other plaintiff in the

12

underlying case, Save Our Capitol!, elected to challenge the adequacy of the revised EIR by new writ, whereas Save the Capitol elected to do so by objection to DGS's writ return. DGS notes that certain procedural deadlines and rules apply to new writs, whereas no specific deadlines or rules apply to adjudicating objections to a writ return. DGS does not explain, however, why the potential for inconsistent adjudications and procedures could not be avoided through a trial court order of consolidation. Although the law allows a plaintiff to challenge an agency's purported CEQA compliance by new or supplemental writ, it also allows a plaintiff to instead file objections to the writ return. (*Carmel-by-the-Sea, supra*, 137 Cal.App.3d at p. 971; see also *County of Inyo, supra*, 71 Cal.App.3d at p. 203.) Where two plaintiffs in the same case elect to pursue different means of enforcing CEQA compliance, we perceive no impediment to the trial court's ability to consolidate the matters and issue a single decision.

In addition, DGS complains that allowing Save the Capitol to challenge the adequacy of the revised EIR by objecting to the writ return would "recast the return as an opening to bring new merits challenges." Not so. In *County of Inyo*, after issuing a writ of mandate directing the public agency to prepare a legally sufficient EIR for a certain project, this court sustained the petitioner's objection to the agency's writ return because the EIR failed to comply with CEQA. (*County of Inyo, supra*, 71 Cal.App.3d at pp. 188-189, 203) But this court declined to address issues beyond what had been required by the writ of mandate. (*Id*. at p. 204.) Here, the trial court must determine that the revised EIR is consistent with *Save Our Capitol* before the writ may be discharged, but no new issues may be raised by objection to DGS's writ return.

II

Save the Capitol also contends that discharge of the writ was premature because DGS has not yet reapproved the visitor center component of the project.

Citing *Dusek v. Redevelopment Agency* (1985) 173 Cal.App.3d 1029, the trial court concluded that an action approved by the public agency may be smaller than the

13

entire project initially described in the EIR.  We agree.  Approval of a project that is narrower than the project initially proposed is not an abuse of discretion.  (*Id.* at p. 1041; see also *Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 529.)  Approving only two of the three project components does not operate as an impediment to discharge of the writ.  In other words, as things currently stand, the proposed visitor center is not part of the approved project.  If the visitor center is later approved, that decision would trigger a new deadline to bring a challenge under CEQA.  (See § 21167.)  The trial court must determine that the revised EIR is consistent with *Save Our Capitol* before discharging the writ, but only with respect to the approved project components.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings.  As to the approved project components, the trial court must determine that the revised EIR is consistent with *Save Our Capitol, supra*, 87 Cal.App.5th 655 before discharging the peremptory writ of mandate.


                                     /S/
                                MAURO, Acting P. J.


We concur:


   /S/
DUARTE, J.


   /S/
BOULWARE EURIE, J.


14

Filed 5/15/24

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SAVE THE CAPITOL, SAVE THE TREES, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DEPARTMENT OF GENERAL SERVICES, <br><br> Defendant and Respondent; <br><br> JOINT COMMITTEE ON RULES OF THE CALIFORNIA STATE SENATE AND ASSEMBLY, <br><br> Real Party in Interest and Respondent. | C100160 <br><br> (Super. Ct. No. 34-2021-80003717-CU-WM-GDS) <br><br> ORDER GRANTING REQUEST TO PUBLISH |


APPEAL from a judgment of the Superior Court of Sacramento County, Steven M. Gevercer, Judge. Reversed and Remanded.


Brandt-Hawley Law Group and Susan Brandt-Hawley for Plaintiff and Appellant.


Rob Bonta, Attorney General, Tracy L. Winsor, Senior Assistant Attorney General, Russell B. Hildreth, Sierra S. Arballo, Sophie A. Wenzlau, Gwynne B. Hunter, Deborah A. Wordham, and James C. Crowder, Deputy Attorneys General, for Defendants and Respondents and Real Party in Interest and Respondent.

1

THE COURT:

The opinion in the above-entitled matter filed on April 18, 2024, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


FOR THE COURT:


____/S/_____
MAURO, Acting P. J.


____/S/_____
DUARTE, J.


____/S/_____
BOULWARE EURIE, J.

2